SHORT RECORD
NO. 22-2467
FILED 08/18/2022

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| TABATHA WASHINGTON and<br>DONTE HOWARD,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO,<br>VINCENT ALONZO (Star No. 21623),<br>ADRIAN GARCIA (Star No. 20517) and<br>DEMOSTHENES BALODIMAS<br>(Star No. 21204),<br><br>        Defendants. | Case No.: 1:20-cv-00442<br><br>Judge Manish S. Shah |

## NOTICE OF APPEAL

Plaintiff Tabatha Washington and Plaintiff Donte Howard appeal to the United States Court

of Appeals for the Seventh Circuit from the final judgment entered on July 22, 2022.

Dated: August 17, 2022

Respectfully submitted,

/s/ Paul K. Vickrey
Paul K. Vickrey
Patrick F. Solon
Dylan M. Brown
**Vitale, Vickrey, Niro, Solon & Gasey LLP**
311 S. Wacker Drive, Suite 2470
Chicago, IL 60606
Phone: (312) 236-0733
vickrey@vvnlaw.com
solon@vvnlaw.com
dbrown@vvnlaw.com

Mark D. Roth
**Roth Fioretti LLC**
311 S. Wacker Drive, Suite 2470
Chicago, Illinois 60606
Phone: (312) 922-6262
mark@rothfioretti.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TABATHA WASHINGTON and DONTE HOWARD, | |
| Plaintiffs, | |
| v. | Case No.: 1:20-cv-00442 |
| CITY OF CHICAGO, VINCENT ALONZO (Star No. 21623), ADRIAN GARCIA (Star No. 20517) and DEMOSTHENES BALODIMAS (Star No. 21204), | Judge Manish S. Shah |
| Defendants. | |

**DOCKETING STATEMENT**

Plaintiff-Appellants Tabatha Washington and Donte Howard respectfully submit this Docketing Statement for their appeal to the United States Court of Appeals for the Seventh Circuit, pursuant to Circuit Rules 3(c)(1) and 28(a).

**1. Statement Concerning the District Court's Jurisdiction**

Both Plaintiffs filed claims for relief under 42 U.S.C. § 1983 for constitutional violations by defendant police officers acting under color of state law, giving the district court federal question jurisdiction under 28 U.S.C. § 1331. Plaintiffs also filed related tort claims under Illinois law, for malicious prosecution and intentional infliction of emotional distress against the defendant police officers and their employer City of Chicago (based on respondeat superior), for which the district court had supplemental jurisdiction under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the federal claims.

**2. Statement Concerning Appellate Jurisdiction**

The Court of Appeals for the Seventh Circuit has jurisdiction under 28 U.S.C. § 1291, based on the following particulars:

(i) The district court entered a final judgment on July 22, 2022, which disposed of all claims with respect to all parties.

(ii)-(iii) No post-judgment motions were filed.

(iv) Plaintiffs filed their notice of appeal on August 17, 2022.

(v) This is not an appeal from the decision of a magistrate judge.

**3. Statement Regarding Other Matters Under Circuit Rule 3(c)(1)**

There are no prior or related appellate proceedings in the case.

There is no prior litigation in the district court.

There are no related criminal convictions.

No parties to the litigation appear in an official capacity.

Dated: August 17, 2022                      Respectfully submitted,

                                            /s/ Paul K. Vickrey
                                            Paul K. Vickrey
                                            Patrick F. Solon
                                            Dylan M. Brown
                                            **Vitale, Vickrey, Niro, Solon & Gasey LLP**
                                            311 S. Wacker Drive, Suite 2470
                                            Chicago, IL 60606
                                            Phone: (312) 236-0733
                                            vickrey@vvnlaw.com
                                            solon@vvnlaw.com
                                            dbrown@vvnlaw.com

                                            Mark D. Roth
                                            **Roth Fioretti LLC**
                                            311 S. Wacker Drive, Suite 2470
                                            Chicago, Illinois 60606
                                            Phone: (312) 922-6262
                                            mark@rothfioretti.com
                                            *Attorneys for Plaintiffs*

- 2 -

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TABATHA WASHINGTON and DONTE
HOWARD,

        Plaintiffs,

        v.

CITY OF CHICAGO, et al.,

        Defendants.

No. 20 CV 442

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Tabatha Washington, Donte Howard, and Washington's cousin Carlton White each engaged in physical altercations with Kim Edmondson outside Washington's apartment in Chicago. When the skirmishes ended, Edmondson left the area, walked about half a mile north, and told three friends he'd been jumped by two men and one or two women. Edmondson then walked behind a nearby dumpster, collapsed, and with blood pooling around the back of his head, died. The medical examiner would later conclude that Edmondson died from blunt force trauma to the back of the head.

Later that evening, Washington and White were taken into custody and questioned by defendant detectives Vincent Alonzo, Adrian Garcia, and Demosthenes Balodimas. A prosecutor from the Cook County State's Attorney's Office also interviewed Washington and White. A few days later, the State's Attorney's Office approved first-degree murder charges against both Washington and Howard (and rejected charges against White). Within a month, a judge had determined there was probable cause to detain Washington and Howard, and a grand jury indicted both of

them on counts of first-degree murder and mob action. Months later, after a one-day bench trial, a Cook County judge found Washington and Howard not guilty on all counts.

Howard and Washington filed this suit against Alonzo, Garcia, Balodimas, and the City of Chicago, bringing claims for unlawful pre-trial detention under the Fourth Amendment and 42 U.S.C. § 1983, and for malicious prosecution under Illinois law. Defendants move for summary judgment under Federal Rule of Civil Procedure 56. Because probable cause supported plaintiffs' arrests and detention, and plaintiffs have failed to produce any evidence from which a reasonable juror could conclude that the detectives improperly influenced the prosecutor's independent decision to bring proceedings against plaintiffs, the motion is granted.

## I.    Legal Standards

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). I construe all facts and reasonable inferences in plaintiffs' favor. *Robertson v. Department of Health Services*, 949 F.3d 371, 377–78 (7th Cir. 2020). The defendants are entitled to summary judgment, however, if plaintiffs have not made "a sufficient showing on an essential element" of their case for which they have the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (nonmovant's version of events must be "backed up by a measure of plausible evidence" in the record).

## II.    Background

This case ultimately comes down to whether probable cause existed to arrest, detain, and prosecute Howard and Washington. It centers on whether—based on the information defendants possessed at the time—a reasonable officer could conclude that such information supplied probable cause to believe that each plaintiff had committed a crime. *See United States v. Reedy*, 989 F.3d 548, 554 (7th Cir. 2021). Many facts offered by the parties are not material to the probable-cause inquiry. For example, facts concerning the ultimate truth of what happened, the underlying veracity of what the detectives were told, subsequent evidence and testimony offered at plaintiffs' criminal trial, and the findings of fact by the judge in the criminal case. What's more, many of the purported disputes in the parties Rule 56.1 statements are readily resolved by reference to the underlying source material. When necessary, I consider and cite such materials below. *See* Fed. R. Civ. P. 56(c)(3).

In short, despite a litany of purported disputes in the parties' Local Rule 56.1 statements of fact, the material facts regarding probable cause—what the officers knew at the time of arrest and detention—are largely undisputed.

### A.    Edmondson's Final Moments

On May 30, 2018, at about 9 p.m., Kim Edmondson walked up to three of his friends—Anthony Beard, Khadijah Hill, and Larry Nelson—near the intersection of West Lake Street and North Laramie Avenue. [125] ¶ 3; [119] ¶ 8.[1] Shirtless and

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from plaintiffs' response to defendants' amended Local Rule 56.1 statement,

bleeding from his lip and chest, Edmondson told them that he'd been jumped by two men and one or two women with a pole; he then walked behind a dumpster to urinate. [125] ¶ 3; [105-19]; [105-20]; [105-21]. Soon thereafter, someone told Beard, Hill, and Nelson that their friend had collapsed, and they walked over and saw Edmondson behind the dumpster lying on his back, not breathing, with blood pooling around his head. [125] ¶ 4. They called 911 and flagged down nearby police officers, but first responders were unable to resuscitate Edmondson. *Id.* He was pronounced dead at the scene. *Id.*

Chicago Police Department detectives Vincent Alonzo, Adrian Garcia, and Demosthenes Balodimas arrived at the parking lot to investigate the death. [125] ¶ 5. Beard reported that Edmondson approached him bleeding and said that he was attacked by a couple of males and a couple of females near where he lived. [125] ¶ 6; [105-8] at 15:20–16:22. Nelson also reported that Edmondson was bleeding and said he'd been beaten up by his neighbors. [125] ¶ 6. Nelson indicated that he knew where Edmondson had lived and voluntarily brought officers to 5316 West Washington Boulevard, about half a mile away from the parking lot. [125] ¶ 7; [105-9] at 12:23–13:18. Garcia, Balodimas, and other officers arrived at the address and canvassed the building to see if anyone knew about an altercation with Edmondson. [125] ¶ 7; [105-11].

---

[125], and defendants' response to plaintiffs' statement of additional material facts, [119], where both the asserted fact and the opposing party's response are set forth in one document.

B.    **Washington's Apartment**

An officer stood at the back door of plaintiff Tabatha Washington's ground-level apartment when Washington, her cousin Carlton White, and plaintiff Donte Howard opened the door. [125] ¶ 8; [105-11] at 1:00–40. Howard initially told the officer that he could not enter without a warrant. [105-11] at 1:35–46. The officer asked if everything was alright in the apartment and Washington said yes; White then stated that "there was an altercation earlier, with some guy that had been evicted from this building." [105-11] at 1:51–57. Washington added: "He was trying to fight me." *Id*. at 1:58–2:00.

Washington then met Garcia and other officers at the front door and allowed them to enter her apartment. [125] ¶ 8. She and White spoke with officers in the living room while Howard and another friend, Cynthia Cage, sat on the couch nearby. *Id*.; [105-11] at 3:21–4:07. White explained that there was an altercation with a guy who had been evicted from the building who "kept coming around trying to fight," and White was defending himself. [105-11] at 3:21–51. Washington added "he tried to hit me," so she hit him to defend herself. [105-11] at 3:54–59. Garcia told the group that they needed to come to the police station to straighten everything out. [125] ¶ 9; [105-11] at 4:09–11. Washington stated that Cage was not involved in the altercation and that Howard had just gotten there. [125] ¶ 9; [105-11] at 4:18–50. Howard told detectives that his name was Jeremiah Johnson and said that he'd just arrived at the apartment. [125] ¶ 10. Detectives handcuffed Washington and White, placed them in separate squad cars, and took them to the police station for further investigation. *Id*.;

5

[105-11] at 8:40–12:59. As White walked with officers to the car, he pointed out a jacket hanging on the fence and told officers Edmondson had hung it up so he could fight. [105-11] at 8:36–48.

### C.    Defendants' Custodial Interviews with Washington and White

Once at the station and just after midnight on May 31, Garcia and Alonzo began interrogating Washington in an interview room. She told detectives that White and Edmondson "got into it," and that she was trying to stop the fight. [125] ¶ 11; [105-15] at 33:18–47. She also said another man fought with Edmondson but denied knowing his name. [125] ¶ 12; [105-15] at 34:52–35:24. Washington said that Edmondson tried to hit her, so she picked up a pole and tried to hit him. [125] ¶ 11; [105-15] at 34:05–31, 38:21–31. But Washington insisted that "nobody hit [Edmondson] with nothing." [125] ¶ 11; [105-15] at 40:01–31. And she denied having any negative history with Edmondson. [125] ¶ 12.

Just after 1:20 a.m., Garcia and Alonzo went to interview White in a different room. [105-16] at 1:18:15–41:15. White told detectives Edmondson had attacked him a week earlier and left a cut on his face. [125] ¶ 13; [105-16] at 1:19:55–20:05. White said the altercation earlier that evening started when Edmondson—clearly high on cocaine or other substances—approached him and Cage and repeatedly called Cage a bitch; when White tried to calm him down, Edmondson swung at him. [125] ¶ 13; [105-16] at 1:21:28–22:04, 1:23:50–24:20. White ducked the punch and hit Edmondson once. *Id*. White then said Washington came out with a "little stick from a tree," hit Edmondson in the chest and told him, "stop playing with my cousin." [125]

¶ 14; [105-16] at 1:22:03–23:12. According to White, Edmondson then said, "I'll be back," and walked away, and White thought it was over with. [125] ¶ 14; [105-16] at 1:22:03–23:17. White told detectives it was only him, Washington, and Cage outside during the altercation with Edmondson. [125] ¶ 15.

Garcia told White that Washington had told detectives that a third man was involved in the fight. [125] ¶ 16; [105-16] at 1:25:48–26:09. White said that the other person, D, was tussling in the street with Edmondson, but they weren't really fighting—they were just exchanging "air blows" and "nobody [was] getting hit, period." [125] ¶ 16; [105-16] at 1:27:52–28:09. White said that while D and Edmondson were quarreling in the street, a white truck pulled up, Edmondson fell on the hood, and the driver demanded that Edmondson get off the hood; Edmondson then got up, said "I'll be right back," and walked away toward Laramie. [105-16] at 1:28:07–29:13. At that point, White, Washington, Cage, and D went to the liquor store, got a drink, and came right back to the apartment. *Id*. at 1:28:34–29:03.

White then explained the incident again, but slightly differently. [125] ¶ 17; [105-16] at 1:31:32–34:07. White said that Edmondson approached him aggressively and tried to punch him; White ducked the punch and hit Edmondson one time. [105-16] at 1:31:32–54. Washington then came outside with a little stick from a tree; she yelled at Edmondson to get off her cousin, and when Edmondson approached Washington, she hit him in the chest. [125] ¶ 17; [105-16] at 1:32:02–30. After that, D and Edmondson exchanged air punches "for another 10 minutes just dancing" in the middle of the street, while White and Washington watched and laughed. [125]

¶ 17; [105-16] at 1:32:31–33:41. Edmondson then backed into the truck, told them he'd be right back, and walked away with a scrape on his chest and a cut on his mouth from falling on the truck. [125] ¶ 18. White told Garcia and Alonzo that the only reason he was at Washington's house was because she didn't feel safe and feared for her life because Edmondson had come to her house, banged on her front and back doors, and said he was the boogeyman. [125] ¶ 19; [105-16] at 1:35:20–55. When Alonzo and Garcia asked for more information about D, White said that Washington knew D. [125] ¶ 19.

At about 2:40 a.m., Alonzo returned Washington's interview room, woke her up, and asked where officers could find D. *Id.* ¶ 20; [105-15] at 2:41:27–39. Washington said she did not know where D was, and said she was trying to figure out who he was talking about because "both their names start with D" (Washington called White "D" sometimes too). [105-15] at 2:41:33–45. Alonzo then asked, "well, D is your cousin, right?" to which Washington responded: "D is Donte"—as in, Donte Howard. [125] ¶ 20; [105-15] at 2:42:46–51. She told Alonzo that she didn't know Donte's last name or where he lived, but she described Howard's physical features and told Alonzo that Donte was going to school and had recently been released from prison. [125] ¶ 20; [105-15] at 2:41:53–43:46. Alonzo left and Garcia came in a couple minutes later to ask Washington about the second man in her apartment; she confirmed that it was Howard and that he was the other man fighting with Edmondson. [125] ¶ 21.

Garcia returned 20 minutes later with Balodimas and informed Washington, for the first time, that Edmondson had died. [125] ¶ 22; [105-15] at 3:05:31–06:10.

8

Garcia accused Washington of not being truthful because she told detectives that she didn't know the other person who fought with Edmondson when she in fact knew that Howard was that person. [105-15] at 3:06:40–07:25. Washington insisted that she had been truthful, but the detectives were having none of it. [105-15] at 3:07:25–51. Balodimas scolded Washington and said that, when he was standing outside her apartment, he heard her say, "Fuck that bitch he got what he deserved," and "he ain't gonna get my gun," and Balodimas said he heard White say, "You gotta protect, you gotta fight." [105-15] at 3:08:35–09:03. Washington said she never said or heard any of that, told Balodimas she didn't have any gun, and insisted that police could search her house and they wouldn't find a gun. [105-15] at 3:09:03–21; [119] ¶ 16. But Washington later told Garcia and Balodimas that just before officers entered the apartment, other people were talking about the fight while she was getting her kids ready for bed. [105-15] at 3:17:53–18:46.

Garcia told Washington that she better start talking, so she described the altercation again. [105-15] at 3:09:51–56. Washington told detectives the fight started with White and Edmondson and she stepped in to break it up. [125] ¶ 22. Edmondson tried to hit Washington, and Washington picked up a stick or a pole and hit him in the chest with it. [125] ¶ 23; [105-15] at 3:11:30–50, 3:15:18–23. She said no one beat up Edmondson—it "wasn't that kind of fight" and they were just slipping and sliding because it was raining. [105-15] at 3:10:41–54. After she tried to break up the fight, Howard and Edmondson got into a tussle, Edmondson backed up into a car, and "that was it" and Edmondson walked off. [105-15] at 3:10:57–11:20.

9

Balodimas told Washington: "Let me tell you something. The damage that was done to his head, you couldn't have done that." *Id*. at 3:11:36–44. Washington agreed, and intimated that she only hit Edmondson in the chest. *Id*. at 3:11:45–56. Garcia and Balodimas then pressed Washington to tell them who hit Edmondson with the pole in the head, and she said Howard did. [125] ¶ 24. Garcia told Washington to start over again and tell them what happened; she said that White and Edmondson started arguing about something stupid and then started tussling. *Id*. ¶ 25. Washington said that when she tried to break it up, Edmondson tried to hit her, so she picked up a light stick and hit Edmondson across his chest. [125] ¶ 26; [105-15] at 3:14:50–15:20.

When pressed further about who hit Edmondson in the head and how many times, Washington told detectives that Howard hit Edmondson over the head with a pole one time. [125] ¶ 27; [105-15] at 3:15:40–52, 3:16:20–29. Garcia assured Washington: "We don't think you're strong enough to do the damage that [Edmondson] sustained, okay? So it's between your cousin and Donte, and who did what, and that's what we need to know." [105-15] at 3:17:16–28. Washington again said that it was Howard. [125] ¶ 27; [105-15] at 3:17:28–37. Washington later told detectives three times that she saw Howard hit Edmondson with a pole twice. [125] ¶ 28; [105-15] at 3:19:35–59, 3:22:48–58, 3:25:20–25. Washington said she wasn't sure if Howard hit Edmondson more times, because she brought her kids inside after Howard hit Edmondson with the pole twice. [125] ¶ 29; [105-15] at 3:20:01–13, 3:22:48–23:09, 3:25:20–25. Washington apologized for lying and insisted that she did not know that Howard hit Edmondson that hard. [125] ¶ 29; [105-15] at 3:28:09–31.

10

At about 5 a.m., Garcia and another detective woke up White for another interview. [125] ¶ 33; [105-16] at 4:57:46–55. White said the other man in the fight was the man in Washington's apartment (Howard) and told detectives three times that neither Howard nor Edmondson landed a punch on each other. [125] ¶ 33. White repeated that he hit Edmondson once and then Edmondson left, before coming back and starting to fight with Howard in the street. *Id.* ¶ 34. White said Edmondson left after the fight with Howard. *Id.* ¶ 35. Detectives then asked White how many times Washington struck Edmondson, and he said "probably three" times—in the chest, arm, and lip—with a gray, non-wooden stick; according to White, "that was the last hit" on Edmondson. *Id.* ¶ 36; [105-16] at 5:13:51–14:10. White was adamant that no one ever hit Edmondson on the top of the head and that Edmondson had no head injury when he walked off. [119] ¶ 21; [105-16] at 5:15:18–17:31, 5:21:21–33, 5:27:27–28:31.

White also provided more details about the lead-up to the altercation. [125] ¶¶ 37–39; [105-16] at 5:17:41–25:50. White said he had just been dropped off and Cage, Washington, and Howard were all outside selling snow cones. [105-16] at 5:17:41–53. When White arrived, Edmondson "was already outside … on some angry shit;" White impersonated Edmonson's demeanor for the detectives by rocking back and forth, huffing and puffing angrily. *Id.* at 5:17:53–59. White said he tried to go talk to Edmondson to see if he was good, and Edmondson told him "I'm out of my mind," so White gave him some of his drink and a cigarette. *Id.* at 5:18:01–19. But White could tell that Edmondson was already high and aggravated, walking back and

forth, talking to himself, looking angry, and tying up his shoes tight. *Id.* at 5:18:26–
36. Edmondson then approached the group and said something to Howard; after
White told Edmondson not to start anything, Edmondson turned to White and White
punched him and told him to calm down. *Id.* at 5:18:37–50. White said that he wasn't
going to approach Edmondson because the last time he got his face scratched, so he
was playing defense, not offense. *Id.* at 5:18:55–19:13.

Edmondson did walk away, but then approached again, called Howard a bitch,
and wanted to fight him. [125] ¶ 38; [105-16] at 5:19:17–23. According to White,
Howard had animosity toward Edmondson because Edmondson had tried to enter
Washington's apartment when she was alone, calling himself the boogeyman. [125]
¶ 41; [105-16] at 5:23:45–24:19. Howard and Edmondson started fighting, neither
landing any punches. [125] ¶ 38. White said that's when Washington ran up and hit
Edmondson with a little stick in the chest, arm, and lip, and after that, Edmondson
walked away and said he'd be right back but never returned. [125] ¶ 39; [105-15] at
5:26:01–21. Garcia informed White that Washington told detectives that she went
inside with her children after White hit Edmondson; White said if Washington said
that, it was a lie because the kids were already inside and Washington and Cage were
outside the whole time. [125] ¶ 42; [105-16] at 5:29:30–59, 5:31:19–30.

White told detectives that he did not tell them Howard was the other person
in the apartment because he didn't know him—Washington did—and he was not
going to snitch on someone he did not know. [125] ¶ 40. White later told detectives
that Howard was Washington's friend's boyfriend. *Id.* ¶ 41.

After Washington had been detained in the interview room for over 17 hours, she asked for an update on the case. [125] ¶ 30. She told Alonzo that she hit Edmondson in the lip and across his chest, and when he kept coming at her, Howard started fighting Edmondson. [125] ¶ 30; [105-15] at 17:14:55–15:09. She was adamant that she never hit him in the head and told Alonzo that he could ask Cage because she was right there next to Washington. [105-15] at 17:20:28–43.

### D.    Other Witness Interviews

On the morning of May 31, Alonzo and Balodimas returned to Washington's apartment to speak with Cage. [125] ¶ 31. Cage told the detectives that White and Edmondson started arguing in front of the building, that Edmondson was calling her a bitch, and that White punched Edmondson while the two were arguing. [125] ¶ 31; [105-17] at 19. Cage said that during the altercation between White and Edmondson, Washington approached with a pole in her hand and hit Edmondson with it several times. [125] ¶ 32; [105-17] at 19. Then, Cage continued, Howard began to fight with Edmondson in the middle of the street, landing some punches until Edmondson lightly fell back into a passing car and walked away towards Laramie. *Id*. She said Edmondson was bleeding from the mouth but appeared fine when he left. *Id*.; [119] ¶ 18.

Later that evening, Cook County Assistant State's Attorney Patrick Waller interviewed Beard, Hill, and Nelson at the station. [125] ¶ 43. Nelson said Edmondson walked up to him near Lake and Laramie, shirtless and bleeding from chest and right cheek area, and said that the men and women who lived downstairs

13

from him had attacked him with poles and pipes. [125] ¶¶ 44–45. According to Nelson, Edmondson then spoke to the others, walked away, and collapsed on the ground behind a dumpster. [125] ¶ 45. Beard told a similar story: Edmondson walked up to him, with cuts on his chest and lip, said that a couple of guys and a woman jumped him with a pole or a pipe; he then walked off and collapsed behind the dumpster. [125] ¶¶ 48–49; [105-21] at 3:50–4:15, 7:54–8:05, 9:21–59. Hill told Waller that Edmondson approached her and Beard with gashes on his lip and chest and told her that he had been jumped by two men and two women with a pole; Edmondson then walked behind the dumpster to go to the bathroom, and collapsed. [125] ¶¶ 46–47; [105-20] at 4:25–40, 5:13–25, 8:20–57.

Hill also said that she only looked at him from the front and did not see any leaking or dripping blood down his back. [119] ¶¶ 11–12; [105-20] at 6:36–44. Hill assumed Edmondson had fallen and hit his head when she saw him behind the dumpster after his collapse. [119] ¶ 12; [105-20] at 6:30–36. None of the three friends told detectives that they saw Edmondson bleeding from the top or back of his head.

E.    **Assistant State's Attorney Interviews of White and Washington**

A few hours later, just before 11 p.m. on May 31, Waller interviewed White. [125] ¶ 50. White told Waller that he was outside with Cage, Washington, and Howard. *Id*. When it started to rain, they all went inside, but Edmondson tried to force his way into Washington's apartment; that's when Washington grabbed a pole

14

from her child's feeding tube and showed it to Edmondson. *Id.* ¶¶ 50–51.[2] Edmondson backed away but started to yell and get into White's face, before White struck him. *Id.* ¶¶ 51–52. Howard then approached and started fighting with Edmondson in the street. [125] ¶ 52; [105-22] at 21. Washington went into the house and came out with a little gray aluminum stick, and hit Edmondson multiple times in the chest, arm, and lip. [125] ¶ 52; [105-22] at 21–22.

About half an hour after concluding his interview with White, Waller interviewed Washington. [125] ¶ 53. Washington told Waller that she was outside selling snow cones with Cage, White, Howard, and they were all drinking, but no one was drunk. *Id.* ¶¶ 54–55; [105-15] at 23:43:55–44:10, 23:48:02–12. According to Washington, after Edmondson approached and got in her face, she found a light metal pole with a ragged end on the ground and swung it at him three times. [125] ¶¶ 54–55. Washington said she struck Edmondson on the left side of his lip first and then on his chest after he jumped at her again, but the third swing missed because Edmondson jumped back. [125] ¶¶ 54–56. That was the end of the altercation, Washington said, and she went to the liquor store with Cage, White, and Howard. [125] ¶ 56.

Waller asked Washington about Howard's involvement; Washington said he and Edmondson only threw a few punches and then Edmondson left. [125] ¶ 57. Washington described the sequence of events as: first, White punched Edmondson

---

[2] Plaintiffs admit these facts but note that they come from a video statement log and not the video itself. But plaintiffs do not deny or controvert the facts cited therein.

once; then—after Edmondson continued to act disrespectful and jumped at Washington—she got the stick from the ground and swung it at him three times; finally, Howard and Edmondson fought in the street. [125] ¶ 58; [105-15] at 23:53:23–55:30. Waller asked Washington about White's statement to detectives that she went inside and brought out a pole; she said that was not true and the pole came from the ground outside. [125] ¶ 59. When asked about whether she, Cage, Howard, and White were discussing the altercation in the apartment later that night, Washington told Waller that she couldn't remember specifics but said everybody was talking loud about what had happened. [105-15] at 23:56:44–57:30.

When Waller confronted Washington about her earlier statement to detectives about Howard striking Edmondson in the head with the pole, Washington responded that she was talking fast and was scared and nervous. [125] ¶ 60. Washington said that she did not mean to say Howard hit him with the pole. *Id*. Howard "was hitting him with his fists," Washington said, "that's why I said I don't see how his head got bust[ed]." *Id*.; [105-15] at 24:00:41–01:03. Washington repeatedly insisted that she never hit Edmondson in the head. [105-15] at 24:01:03–4:50.

### F.    Edmondson's Autopsy

Dr. Kristin Howell performed Edmondson's autopsy at 7:45 a.m. on May 31. [125] ¶ 61. She concluded that the cause of death was blunt force trauma to the head. *Id*.; [119] ¶ 17. The autopsy revealed a cross-shaped 1.25-inch by .75-inch laceration on the top, back, right side of Edmondson's head, a hole in his skull that was about 1-inch by 1-inch, and fragments of bone within the brain. [125] ¶ 62; [114-30] at 3–4.

16

Other injuries included lacerations and contusions to Edmondson's left lip, an abrasion to his left ear, a laceration to the center of his chest, and multiple contusions on both arms. [125] ¶ 63.

Howell also concluded that Edmondson's death was a homicide. [114-30] at 8. She based her conclusion on the medical examiner investigator's report of assault and her own examination of Edmondson's injuries, which were consistent with an assault. [125] ¶¶ 61, 63; [119] ¶ 17; [105-24] at 110:14–111:6. The investigator's report falsely stated that Nelson witnessed Edmondson getting beat by three Black men and two Black women with pipes in their hands. [119] ¶¶ 14, 17; [114-27].[3] Howell clarified, however, that regardless of the investigator's narrative, she performed an independent autopsy and reached her own conclusion as to the cause and manner of death. [105-24] at 37:1–38:3, 40:4–8. Howell stated that her findings were consistent with an assault and injury with a pipe. [105-24] at 38:4–7. Howell spoke with Alonzo about the results of her autopsy. [125] ¶ 65; [119] ¶ 35.

### G.    Charges and State-Court Proceedings

Waller designated the investigation as continuing and advised another ASA, Laura Ayala-Gonzalez, of all the information he had learned during his investigation. [125] ¶ 67.[4] Washington provided consent to search her apartment to locate the pole

---

[3] The investigator, Lawrence Santoro, said he listened to Nelson speak with an unidentified detective and mistakenly and incorrectly wrote in his report that Nelson witnessed the altercation. [114-29] at 30:2–33:19, 42:22–43:05, 52:22–53:24.

[4] Plaintiffs say that Ayala-Gonzalez testified that she was not given any materials to review before approving felony charges, and Waller admitted that he did not review the videos of the interviews he conducted with Nelson, Hill, Beard, or Washington. But plaintiffs have offered

she used on Edmondson. *Id*. ¶ 68. At the apartment, Alonzo and Balodimas recovered four silver metal poles that appeared to be approximately one inch in diameter; evidence technicians collected the poles and submitted them to the Illinois State Police crime lab for processing. *Id*. One of the poles tested positive for Edmondson's DNA. *Id*. ¶ 69.

On June 1, Ayala-Gonzalez approved the decision to charge Washington with first-degree murder. *Id*. ¶¶ 70–71. The felony minutes form—created and signed by Alonzo for use in a probable-cause detention hearing and approved by Ayala-Gonzalez—stated: "The facts briefly stated are as follows: The defendant, Washington, was arrested after investigation determined that the victim Kim Edmondson was struck on and about the head with a metal object several times by Washington. The victim Edmondson subsequently expired due to the injuries received." [114-34] at 2; [119] ¶ 29. Alonzo spoke with Ayala-Gonzalez when she approved the charges for Washington and rejected charges for White. [119] ¶ 35. The next day, a Cook County judge found probable cause to detain Washington. [125] ¶ 73. Howard was taken into custody on June 4, Ayala-Gonzalez approved the murder charge against him on June 6, and a Cook County judge found probable cause to detain him on June 7. *Id*. ¶¶ 72–73.

Later that month, the State's Attorney's Office presented the charges of first-degree murder and felony mob action against plaintiffs to a grand jury. *Id*. ¶ 74.

---

no evidence to dispute the asserted fact: that Waller spoke with Ayala-Gonzalez and informed her of everything he'd learned about the investigation up to that point. [125] ¶¶ 67, 70.

Nelson, Beard, and Hill testified consistent with the information they had provided the detectives and Waller. *Id*.; [105-5]; [105-31]; [105-32]. Cage also testified before the grand jury and stated that her testimony was consistent with the information she had previously provided to Alonzo. [125] ¶¶ 75–76; [105-33]. Specifically, she testified that after White stopped fighting with Edmondson, Washington retrieved a little pole from her apartment, went after Edmondson with it, and hit him twice. [125] ¶ 75; [105-33] at 7:1–8:21. Then, Cage said, Howard got into an altercation with Edmondson in the street; the two were hitting each other and Howard hit Edmondson a couple of times before Edmondson hit a truck and walked off. [125] ¶¶ 75–76. Alonzo also testified before the grand jury about the investigation into Edmondson's death. *Id*. ¶ 77. No other defendant testified in the grand jury proceedings. *Id*. ¶ 78. On June 28, the grand jury indicted Washington and Howard on both counts. *Id*. ¶ 77.

In November 2019, after a one-day bench trial, a Cook County judge found Washington and Howard not guilty of all charges. [119] ¶ 40. Washington and Howard filed this suit in January 2020, bringing claims against Alonzo, Balodimas, and Garcia for false arrest and unlawful detention under the Fourth Amendment and 42 U.S.C. § 1983 (Count I), and for malicious prosecution under Illinois law (Count II). [1]; [125] ¶¶ 1–2.[5] Plaintiffs also brought claims against the City of Chicago for indemnification and under the doctrine of respondeat superior (Counts IV & V). *Id*. Defendants now move for summary judgment.

---

[5] Defendants note that plaintiffs agreed to drop their intentional infliction of emotional distress claim (Count III), which plaintiffs do not contest. [110] at 8 n.1. Accordingly, defendants are entitled to summary judgment on this claim.

## III.    Analysis

Section 1983 authorizes suits against police officers who violate constitutional rights while acting under color of state law. *See* 42 U.S.C. § 1983. The constitutional right at issue here is the Fourth Amendment's ban on unreasonable seizures. *See* U.S. Const. amend. IV. A plaintiff may recover damages for Fourth Amendment violations based on arrests that lack probable cause at the outset, and for ensuing pretrial detention without probable cause. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918–19 (2017); *Mitchell v. Doherty*, 37 F.4th 1277, 1283–86 (7th Cir. 2022). To prevail on a malicious-prosecution claim under Illinois law, plaintiffs must show that: "(1) [they were] subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff[s'] favor; and (5) there was an injury." *Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018) (citation omitted).

Wrongful pretrial detention and malicious prosecution are distinct claims, but the existence of probable cause is a complete defense to both. *See Farnik v. City of Chicago*, 1 F.4th 535, 545 (7th Cir. 2021) (citation omitted); *Wade v. Collier*, 783 F.3d 1081, 1085 (7th Cir. 2015); *see also Norris v. Serrato*, 761 Fed. App'x 612, 615 (7th Cir. 2019) ("[P]robable cause is an absolute defense to claims under section 1983 against police officers for an allegedly unreasonable seizure, whether a false arrest or a wrongful pretrial detention."). Here, defendants contend that they are entitled to summary judgment because the undisputed material facts demonstrate that they possessed probable cause to arrest and detain plaintiffs.

20

Probable cause "is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (quoting *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010)). The standard is an objective one; a seizure "is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *District of Columbia v. Wesby*, 138 S. Ct. 577, 584 n.2 (2018); *see also Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011) ("The existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim."). Accordingly, an officer's subjective beliefs and motivations are immaterial to whether probable cause exists. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014).

An officer's belief need not be "correct or even more likely true than false, so long as it is reasonable." *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022) (citation omitted). As such, an acquittal does not, without more, undermine the constitutionality of the seizure that preceded it. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."). Instead, an officer has probable cause to seize a person "when, given the totality of the circumstances, a reasonable officer would believe that the suspect had committed a

crime." *Cibulka v. City of Madison*, 992 F.3d 633, 638 (7th Cir. 2021) (citation and quotation marks omitted).

Further, when a court has already determined that probable cause exists to arrest or detain a person, that finding "is normally entitled to a presumption of validity." *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019). The presumption may be rebutted, however, if an officer "knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officer's determination that probable cause existed for the arrest." *Id.* (citation omitted). Similarly, a grand jury's indictment is prima facie evidence of probable cause. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 351 (7th Cir. 2019); *Bontkowski v. United States*, 28 F.3d 36, 37 (7th Cir. 1994) (citing *Freides v. Sani–Mode Mfg. Co.*, 33 Ill.2d 291, 296 (1964)). But the presumption "may be rebutted by evidence that law enforcement obtained the indictment through improper or fraudulent means." *Coleman*, 925 F.3d at 351 (citations omitted).

Here, plaintiffs argue that defendants created a false and misleading narrative that hijacked the investigation and caused their unlawful detention. That narrative consists of two things: (1) Alonzo writing in the felony minutes form that Washington struck Edmondson "on and about the head" and (2) Balodimas's claim that he heard, from outside Washington's apartment, a man and a woman inside the apartment discussing an altercation and a victim getting "what he deserved." Plaintiffs say Alonzo's characterization was false because he knew that Washington struck

22

Edmondson on the lip or mouth area, but no witness told him (or any defendant) that Washington hit Edmondson on the top or back of his head. And plaintiffs say Balodimas made up the conversation between the man and woman in the apartment.

According to plaintiffs, moreover, Alonzo's deceptive spin drove the entire investigation and prosecution. Plaintiffs assert that defendants' "collection of 'evidence,' which was then presented to subsequent decision makers—ASAs, Judges, etc.—was so materially flawed and rife with false, incriminating facts that nobody downstream of the Defendant Officers could *ever* make a fair appraisal of the cases against [Washington] and [Howard]." [113] at 23. As proof, plaintiffs argue that the prosecutors "parroted" false statements from Alonzo and Balodimas to the judge at their probable-cause hearings. But probable cause did not exist, plaintiffs say, because the hearing and the grand jury proceedings were irreversibly tainted by defendants' manipulation of the facts. [113] at 20.

The problem for plaintiffs is that they must show not only that defendants provided false information to prosecutors or judicial officers, but also that their "seizure[s] would lack probable cause without that false evidence." *Ramos v. City of Chicago*, 716 F.3d 1013, 1019 (7th Cir. 2013). Here, after excising both Alonzo's and Balodimas's allegedly false statements, the undisputed facts still demonstrate that defendants had probable cause to detain plaintiffs. No reasonable jury could conclude otherwise.

Start with the offenses of mob action and first-degree murder—the charges brought by prosecutors and on which the grand jury indicted plaintiffs. Illinois's mob-

23

action statute makes it a felony for a person to engage in "the knowing or reckless use of force or violence disturbing the public peace by 2 or more persons acting together and without authority of law." 720 ILCS 5/25-1(a)(1); *People v. Davison*, 236 Ill.2d 232, 242 (2010). In other words, the statute prohibits a person from acting as "part of a group engaged in physical aggression reasonably capable of inspiring fear of injury or harm." *In re B.C.*, 176 Ill.2d 536, 549 (1997) (citing *People v. Simpkins*, 48 Ill.2d 106, 109 (1971)). Illinois's felony-murder rule subjects an offender to a first-degree murder charge if another person is killed during or in furtherance of the offender's commission of a forcible felony. *See* 720 ILCS 5/9-1(a)(3). Felony mob action can serve as a predicate offense underlying a felony-murder charge. *Davison*, 236 Ill. 2d at 243–44; *People v. Davis*, 213 Ill.2d 459, 474–75 (2004). Illinois courts have upheld felony-murder convictions predicated on a defendant's participation in fatal group attacks on a victim, moreover, even when there was no clear evidence that the defendant caused the fatal injuries. *See Davison*, 236 Ill.2d at 243 (citing *Davis*, 213 Ill.2d at 475 and *People v. Viser*, 62 Ill.2d 568 (1975)).

The undisputed facts demonstrate that, at the time of plaintiffs' arrests and detention, defendants possessed probable cause to believe that plaintiffs had acted as part of a group that engaged in violence against Edmondson. The defendant detectives spoke with six witnesses who all corroborated that Edmondson was in a violent quarrel with multiple people just before his death. Edmondson's three friends each reported that Edmondson told them he'd been jumped by two men and one or two women just before he arrived at Lake and Laramie. Officers knew that

Edmondson died of blunt force trauma to the head. Defendants also knew that Washington and Howard had violent altercations with Edmondson shortly before his death because Washington told them as much. Washington, as well as White and Cage, told defendants that Washington hit Edmondson with a metal pole multiple times, including in the face. Washington and Cage reported that Howard fought with Edmondson in the street, and Washington said that Howard hit Edmondson in the back of the head twice with the pole (although she later recanted this part when speaking with Waller). It was reasonable, given these facts, for defendants to believe that plaintiffs had engaged in criminal conduct.

Plaintiffs contend that defendants lacked probable cause to arrest on the mob action charge because there was no evidence that they acted in concert with one another. For support, plaintiffs rely on *People v. Kent*, 2016 IL App (2d) 140340, where an Illinois appellate court vacated a defendant's conviction based on lack of "evidence of a common purpose to disturb the public peace." *Id*. ¶ 25. But while a conviction under the mob-action statute requires evidence of a common purpose, at the probable-cause stage, police officers are not required "to act as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular statute." *Stokes v. Bd. Of Educ. Of the city of Chicago*, 599 F.3d 617, 622–23 (7th Cir. 2010). The facts known to defendants reasonably suggested that plaintiffs (and White) were part of a group engaged in physical violence against Edmondson. That was enough to support the arrest and detention of plaintiffs while prosecutors weighed specific charges. And as defendants point out, the State's Attorney amended

25

plaintiffs' criminal complaints at their detention hearings to seek felony-murder charges. [124] at 10 n.2; [114-35] at 9:20–10:19; [114-37] at 3:16–20. Plaintiffs' have supplied no evidence to suggest that any defendant was responsible for the decision to charge plaintiffs with mob action and felony murder, even as probable cause existed to detain plaintiffs on both charges.

In addition—as defendants point out and plaintiffs do not contest—the facts known to defendants supplied probable cause to arrest Washington and Howard for other crimes under the Illinois code. Based on interviews with Washington and the other witnesses, the officers had probable cause to believe Washington and Howard had committed battery (720 ILCS 5/12–3), aggravated battery (720 ILCS 5/12-3.05), and disorderly conduct (720 ILCS 5/26–1), to name a few. And after Washington told detectives that Howard hit Edmondson in the head with a pole, officers had probable cause to arrest him too. Further, after defendants learned Howard's true identity from Washington and White, they possessed probable cause to believe Howard had committed obstruction by providing a false name. *See* 720 ILCS 5/31–4(a)("A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he or she knowingly … furnishes false information."); *People v. Remias*, 169 Ill.App.3d 309, 310–12 (3rd Dist. 1988) (upholding defendant's conviction under obstruction statute for providing false name to police officer during traffic stop).

Plaintiffs also argue that defendants knew of other evidence that weighed against a probable-cause finding. In particular, plaintiffs emphasize that no witness

ever told defendants that either plaintiff hit Edmondson in the back of the head or reported seeing an injury to the back of his head. Witnesses also told defendants that Edmondson was the aggressor in the altercation and that he seemed fine when he left. Further, street surveillance videos showed Edmondson walking normally along Laramie after the altercation and did not clearly show him bleeding from the back of his head; there was no trail of blood along Edmondson's path between Washington's apartment and Lake and Laramie; and Washington was much smaller than Edmondson. *See* [113] at 22, 26.

But "police often encounter competing and inconsistent stories," and so long as officers have probable cause to believe any crime has been committed, "[t]he Constitution permits them to initiate the criminal process and leave the sifting of competing claims and inferences to detectives, prosecutors, judges, and juries in the criminal prosecution." *Askew v. City of Chicago*, 440 F.3d 894, 896 (7th Cir. 2006). When faced with conflicting and incomplete evidence, officers are not required to "use the rules for summary judgment and draw inferences in favor of the suspects." *Coleman*, 925 F.3d at 351 (quoting *Bridewell v. Eberle*, 730 F.3d 672, 676 (7th Cir. 2013)). Even when presented with information that may be inaccurate, officers are entitled to act "and let the courts determine whether to credit a suspect's claim of innocence." *Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006).

Here, defendants had statements from three witnesses at the scene of Edmondson's death and three witnesses—including Washington herself—to the earlier altercation with Edmondson. All of those stories corroborated, in one way or

another, the fact that Edmondson had been in a violent altercation shortly before his death. No reasonable jury could conclude that such evidence—when paired with Washington's admission that she struck Edmondson with a metal pole multiple times—did not give rise to probable cause to believe Washington had committed a crime. Defendants were not required to accept as true Washington's claims of innocence nor her subsequent recantation regarding Howard hitting Edmondson in the head with a pole. *See Hurem v. Tavares*, 793 F.3d 742, 746 (7th Cir. 2015); *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999) ("Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established."). In short, Washington's "ability to explain away seemingly damning facts [did] not negate the existence of probable cause, even though it might [have] provide[d] a good defense should the case go to trial." *Sroga*, 649 F.3d at 608 (citation omitted).[6]

Moreover, plaintiffs have failed to provide evidence to rebut the probable-cause determinations of the judge at their detention hearings and of the grand jury. A judge found probable cause to detain Washington on June 2 and Howard on June 7. [114-35], [114-37]. In both hearings, an Assistant State's Attorney summarized the evidence against plaintiffs; none of the defendants spoke at the hearings. Plaintiffs have failed to show that any defendant made any statement to a judge—let alone a

---

[6] Howard advances no argument regarding how any allegedly false statements from Alonzo or Balodimas caused his detention. In fact, the prosecutor told judge at the detention hearing that Howard struck Edmondson only with his fists. [114-37] at 4:17–18. Neither that judge nor the grand jury were ever told that Howard used a weapon, or that Howard made the statements Balodimas allegedly heard from inside Washington's apartment.

false one—that was necessary to the judge's determination that probable cause existed to detain plaintiffs. *See Lewis*, 914 F.3d at 477.

There is also no evidence that defendants "obtained the indictment through improper or fraudulent means." *Coleman*, 925 F.3d at 351 (citation omitted). In Illinois, the State's Attorney prosecutes crimes, not the police. *See Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017) (quoting *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996)). To rebut the presumptive probable cause of an indictment, plaintiffs must show some post-arrest action that "influenced the prosecutor's decision to indict." *Colbert*, 851 F.3d at 655 (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 902 (7th Cir. 2001)). There is no evidence that any defendant duped the State's Attorney into seeking pretrial detention or pursuing grand-jury indictments.

In fact, the record demonstrates the opposite. From the earliest stages of the investigation—before signing off on any charging decision—the State's Attorney's Office conducted its own investigation. Assistant State's Attorney Waller interviewed Washington, White, Nelson, Beard, and Hill, and the State's Attorney's Office knew from those interviews that no one claimed that Washington hit Edmondson on the top or back of his head or reported seeing Edmondson bleeding from the top or back of his head before his collapse. The prosecutor had access to the medical examiner and all the relevant witnesses and underlying source material. Waller also knew that Washington had gone back on her story about Howard hitting Edmondson in the head with a pole (because Washington told Waller this). And Waller informed Assistant

29

State's Attorney Ayala-Gonzalez of all the information he had learned from the investigation before she approved charges against Washington and Howard. Plaintiffs' assertions that defendants withheld evidence, or somehow compromised the State's Attorney's independent charging decision, find no support in the record. The only reasonable conclusion to be drawn from the undisputed evidence is that the State's Attorney maintained control over plaintiffs' prosecution.

To the extent that plaintiffs attempt to use Alonzo's grand jury testimony against him, he is absolutely immune from liability based on his grand jury testimony.[7] *See Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) (grand jury witness "has absolute immunity from any § 1983 claim based on the witness' testimony" and "rule may not be circumvented by … using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution"). In addition, his testimony was not false. When asked whether his investigation revealed that Washington had struck Edmondson "with a metal pole about the head and body," Alonzo replied "yes." [105-34] at 5:12–16. Alonzo provided an accurate answer to an imprecise question about the general vicinity of where Washington struck Edmondson. And in any event, his testimony before the grand jury did not supplant the State's Attorney's role in initiating plaintiffs' prosecution. *See Rehberg*, 566 U.S. at 371 ("It would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when

---

[7] Plaintiffs say that Alonzo was the only witness to testify before the grand jury, but Cage, Nelson, Beard, and Hill all testified before the same grand jury (No. 248) as Alonzo (just on different days). *See* [105-5], [105-31], [105-32], [105-33], [105-34].

it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute.").[8]

On a final note, defendants argue that they are at least entitled to qualified immunity. Because no reasonable juror could find that defendants lacked actual probable cause to arrest and detain Washington and Howard, I need not reach defendants' qualified immunity arguments. Suffice it to say, any officer who possessed actual probable cause also had arguable probable cause.

## V.    Conclusion

Defendants' motion for summary judgment, [107], is granted. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date:  July 22, 2022

---

[8] Balodimas did not testify before the grand jury and no witness testified about any purported conversation within Washington's apartment. The issue did not come up before the grand jury and could not have influenced its decision to return an indictment against plaintiffs.

ILND 450 (Rev. 10/13) Judgment in a Civil Action

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Washington, et al.,

Plaintiffs,

v.

City of Chicago, et al.,

Defendants.

Case No.  20-cv-00442
Judge Manish Shah

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

which ☐ includes          pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒    in favor of defendants City of Chicago, Vincent Alonzo, Adrian Garcia, and Demosthenes
Balodimas,

and against plaintiffs Tabatha Washington and Donte Howard.

Defendants shall recover costs from plaintiffs.

---

☐    other:

---

This action was *(check one)*:

☐ tried by a jury with Judge Manish Shah presiding, and the jury has rendered a verdict.
☐ tried by Judge Manish Shah without a jury and the above decision was reached.
☒ decided by Judge Manish Shah on a motion.

Date:  7/22/2022                        Thomas G. Bruton, Clerk of Court

/Susan McClintic , Deputy Clerk

APPEAL,CUMMINGS,MIDP,PROTO,TERMED

## United States District Court
## Northern District of Illinois – CM/ECF NextGen 1.6.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:20–cv–00442

Washington et al v. City Of Chicago et al
Assigned to: Honorable Manish S. Shah
Demand: $9,999,000
Cause: 42:1983 Civil Rights Act

Date Filed: 01/21/2020
Date Terminated: 07/22/2022
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Tabatha Washington**                    represented by    **Mark Daniel Roth**
                                                            Roth Fioretti LLC
                                                            311 S. Wacker
                                                            STE 2470
                                                            Chicago, IL 60606
                                                            (312) 922–6262
                                                            Email: markdroth@gmail.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Patrick F. Solon**
                                                            Vitale, Vickrey, Niro, Solon & Gasey LLP
                                                            311 South Wacker Drive
                                                            Suite 2470
                                                            Chicago, IL 60606
                                                            (312) 236–0733
                                                            Email: solon@vvnlaw.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Paul K Vickrey**
                                                            Vitale, Vickrey, Niro, Solon & Gasey LLP
                                                            311 South Wacker Drive
                                                            Suite 2470
                                                            Chicago, IL 60606
                                                            (312) 236–0733
                                                            Email: vickrey@vvnlaw.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Dylan Michael Brown**
                                                            Vitale, Vickrey, Niro, Solon & Gasey LLP
                                                            311 S. Wacker Drive – Suite 2470
                                                            Chicago, IL 60606
                                                            (312) 236–0733
                                                            Email: dbrown@vvnlaw.com
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Donte Howard**                          represented by    **Mark Daniel Roth**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Patrick F. Solon**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Paul K Vickrey**
                                                            (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dylan Michael Brown**
(See above for address)
*ATTORNEY TO BE NOTICED*


V.

**Defendant**

**City of Chicago**                    represented by **Steven Blair Borkan**
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312) 580−1030
Email: sborkan@borkanscahill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy P Scahill**
Borkan & Scahill, Ltd.
Two First National Plaza
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312) 580−1030
Email: tscahill@borkanscahill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christiane Elizabeth Murray**
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312) 580−1030
Email: cmurray@borkanscahill.com
*ATTORNEY TO BE NOTICED*

**Emily Erin Schnidt**
Borkan & Scahill, Ltd.
20 S. Clark Street
Suite 1700
Chicago, IL 60603
(312) 580−1030
Email: eschnidt@borkanscahill.com
*ATTORNEY TO BE NOTICED*

**Misha Itchhaporia**
Borkan & Scahill Ltd
20 S. Clark St.
Suite 1700
Chicago, IL 60603
312 580 1030
Email: mitchhaporia@borkanscahill.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Vincent Alonzo**                    represented by **Steven Blair Borkan**
*(Star No. 21623)*                     (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy P Scahill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christiane Elizabeth Murray**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Erin Schnidt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Misha Itchhaporia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Adrian Garcia**                    represented by   **Steven Blair Borkan**
*(Star No. 20517)*                                     (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Timothy P Scahill**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Christiane Elizabeth Murray**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Emily Erin Schnidt**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Misha Itchhaporia**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**Demosthenes Balodimas**            represented by   **Steven Blair Borkan**
*(Star No. 21204)*                                     (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Timothy P Scahill**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Christiane Elizabeth Murray**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Emily Erin Schnidt**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Misha Itchhaporia**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/21/2020 | 1 | COMPLAINT filed by Tabatha Washington, Donte Howard; Jury Demand. Filing fee $ 400, receipt number 0752−16634184. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Vickrey, Paul) (Entered: 01/21/2020) |
| 01/21/2020 | 2 | CIVIL Cover Sheet (Vickrey, Paul) (Entered: 01/21/2020) |
| 01/21/2020 | 3 | ATTORNEY Appearance for Plaintiffs Donte Howard, Tabatha Washington by Paul K Vickrey (Vickrey, Paul) (Entered: 01/21/2020) |
| 01/21/2020 | 4 | ATTORNEY Appearance for Plaintiffs Donte Howard, Tabatha Washington by Dylan Michael Brown (Brown, Dylan) (Entered: 01/21/2020) |
| 01/21/2020 | 5 | ATTORNEY Appearance for Plaintiffs Donte Howard, Tabatha Washington by Patrick F. Solon (Solon, Patrick) (Entered: 01/21/2020) |
| 01/21/2020 | | CASE ASSIGNED to the Honorable Manish S. Shah. Designated as Magistrate Judge the Honorable Jeffrey Cummings. Case assignment: Random assignment. (acm, ) (Entered: 01/21/2020) |
| 01/21/2020 | 6 | ATTORNEY Appearance for Plaintiffs Donte Howard, Tabatha Washington by Mark Daniel Roth (Roth, Mark) (Entered: 01/21/2020) |
| 01/21/2020 | | SUMMONS Issued as to Defendants Vincent Alonzo, Demosthenes Balodimas, City Of Chicago, and Adrian Garcia. (acm, ) (Entered: 01/21/2020) |
| 01/22/2020 | 7 | MOTION by Plaintiffs Donte Howard, Tabatha WashingtonTo Release Grand Jury Transcripts (Attachments: # 1 Exhibit A)(Vickrey, Paul) (Entered: 01/22/2020) |
| 01/22/2020 | 8 | NOTICE of Motion by Paul K Vickrey for presentment of motion for miscellaneous relief 7 before Honorable Manish S. Shah on 1/28/2020 at 09:45 AM. (Vickrey, Paul) (Entered: 01/22/2020) |
| 01/22/2020 | 9 | NOTICE TO THE PARTIES – The Court is participating in the Mandatory Initial Discovery Pilot (MIDP). The key features and deadlines are set forth in this Notice which includes a link to the (MIDP) Standing Order and a Checklist for use by the parties. In cases subject to the pilot, all parties must respond to the mandatory initial discovery requests set forth in the Standing Order before initiating any further discovery in this case. Please note: The discovery obligations in the Standing Order supersede the disclosures required by Rule 26(a)(1). Any party seeking affirmative relief must serve a copy of the following documents (Notice of Mandatory Initial Discovery and the Standing Order) on each new party when the Complaint, Counterclaim, Crossclaim, or Third−Party Complaint is served. (aee, ) (Entered: 01/22/2020) |
| 01/27/2020 | 10 | MINUTE entry before the Honorable Manish S. Shah: Plaintiffs' motion for an order to release grand jury transcripts 7 is denied without prejudice. Plaintiffs have not established good cause to conduct discovery in advance of a Rule 26 planning conference and before defendants have appeared. Plaintiffs may renew the motion after defendants appear. No appearance on 1/28/20 is necessary. Notices mailed. (psm, ) (Entered: 01/27/2020) |
| 01/29/2020 | 11 | AFFIDAVIT of Service filed by Plaintiffs Donte Howard, Tabatha Washington regarding Summons and Complaint served on Adrian Garcia on 01/22/2020 (Vickrey, Paul) (Entered: 01/29/2020) |
| 01/29/2020 | 12 | AFFIDAVIT of Service filed by Plaintiffs Donte Howard, Tabatha Washington regarding Summons and Complaint served on City of Chicago on 01/23/2020 (Vickrey, Paul) (Entered: 01/29/2020) |
| 01/29/2020 | 13 | AFFIDAVIT of Service filed by Plaintiffs Donte Howard, Tabatha Washington regarding Summons and Complaint served on Demosthenes Balodimas on 01/22/2020 (Vickrey, Paul) (Entered: 01/29/2020) |
| 01/29/2020 | 14 | AFFIDAVIT of Service filed by Plaintiffs Donte Howard, Tabatha Washington regarding Summons and Complaint served on Vincent Alonzo on 01/22/2020 (Vickrey, Paul) (Entered: 01/29/2020) |

| 02/07/2020 | 15 | ATTORNEY Appearance for Defendant City Of Chicago by Steven Blair Borkan (Attachments: # 1 Notice of Filing)(Borkan, Steven) (Entered: 02/07/2020) |
| --- | --- | --- |
| 02/07/2020 | 16 | ATTORNEY Appearance for Defendant City Of Chicago by Timothy P Scahill (Attachments: # 1 Notice of Filing)(Scahill, Timothy) (Entered: 02/07/2020) |
| 02/07/2020 | 17 | ATTORNEY Appearance for Defendant City Of Chicago by Misha Itchhaporia (Attachments: # 1 Notice of Filing)(Itchhaporia, Misha) (Entered: 02/07/2020) |
| 02/07/2020 | 18 | ATTORNEY Appearance for Defendant City Of Chicago by Emily Erin Schnidt (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 02/07/2020) |
| 02/07/2020 | 19 | ATTORNEY Appearance for Defendant City Of Chicago by Christiane Elizabeth Murray (Attachments: # 1 Notice of Filing)(Murray, Christiane) (Entered: 02/07/2020) |
| 02/11/2020 | 20 | MOTION by Defendant City Of Chicago for extension of time *to Answer or Otherwise Plead, Unopposed* (Schnidt, Emily) (Entered: 02/11/2020) |
| 02/11/2020 | 21 | NOTICE of Motion by Emily Erin Schnidt for presentment of extension of time 20 before Honorable Manish S. Shah on 2/20/2020 at 09:45 AM. (Schnidt, Emily) (Entered: 02/11/2020) |
| 02/12/2020 | 22 | MINUTE entry before the Honorable Manish S. Shah: A status hearing is set for 4/16/20 at 9:30 a.m. No later than three business days before the status hearing, the parties shall file a joint initial status report. A template for the Initial Status Report, setting forth the information required, may be found at http://www.ilnd.uscourts.gov/Judges.aspx by clicking on Judge Shah's name and then again on the link entitled 'Initial Status Conferences.' Notices mailed. (psm, ) (Entered: 02/12/2020) |
| 02/14/2020 | 23 | MINUTE entry before the Honorable Manish S. Shah: The unopposed motion for extension of time 20 is granted, and no appearance on the motion is necessary. All defendants have until 4/14/20 to respond to the complaint. Initial status hearing remains set for 4/16/20 at 9:30 a.m. (mss) (Entered: 02/14/2020) |
| 02/24/2020 | 24 | ATTORNEY Appearance for Defendants Vincent Alonzo, Demosthenes Balodimas, Adrian Garcia by Steven Blair Borkan (Attachments: # 1 Notice of Filing)(Borkan, Steven) (Entered: 02/24/2020) |
| 02/24/2020 | 25 | ATTORNEY Appearance for Defendants Vincent Alonzo, Demosthenes Balodimas, Adrian Garcia by Timothy P Scahill (Attachments: # 1 Notice of Filing)(Scahill, Timothy) (Entered: 02/24/2020) |
| 02/24/2020 | 26 | ATTORNEY Appearance for Defendants Vincent Alonzo, Demosthenes Balodimas, Adrian Garcia by Misha Itchhaporia (Attachments: # 1 Notice of Filing)(Itchhaporia, Misha) (Entered: 02/24/2020) |
| 02/24/2020 | 27 | ATTORNEY Appearance for Defendants Vincent Alonzo, Demosthenes Balodimas, Adrian Garcia by Emily Erin Schnidt (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 02/24/2020) |
| 02/24/2020 | 28 | ATTORNEY Appearance for Defendants Vincent Alonzo, Demosthenes Balodimas, Adrian Garcia by Christiane Elizabeth Murray (Attachments: # 1 Notice of Filing)(Murray, Christiane) (Entered: 02/24/2020) |
| 03/16/2020 | 29 | ORDER Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 16, 2020. All open cases are impacted by this Amended General Order. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/16/2020: Mailed notice. (ecw, ) (Entered: 03/17/2020) |
| 03/30/2020 | 30 | ORDER Seconded Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 30, 2020. All open cases are impacted by this Second Amended General Order. Amended General Order 20−0012, entered on March 17, 2020, and General Order 20−0014, entered on March 20, 2020, are vacated and superseded by this Second Amended General. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/30/2020: Mailed notice. (docket4, ) (Entered: 03/31/2020) |

| 04/01/2020 | 31 | MINUTE entry before the Honorable Manish S. Shah: Status hearing on 4/16/20 is stricken and no appearance is necessary. The parties' joint initial status report remains due on 4/13/20 and the court will enter a scheduling order in response. Notices mailed. (psm, ) (Entered: 04/01/2020) |
|---|---|---|
| 04/10/2020 | 32 | Rule 26(f) Report for Mandatory Initial Discovery Pilot (MIDP) *Parties' Joint Rule 26(f)(1) Initial Status Report*, filed by Plaintiffs Donte Howard, Tabatha Washington. (Vickrey, Paul) (Entered: 04/10/2020) |
| 04/10/2020 | 33 | MOTION by Plaintiffs Donte Howard, Tabatha Washington To Release Grand Jury Transcripts *Plaintiffs' Unopposed Renewed Motion to Release Grand Jury Transcripts* (Attachments: # 1 Exhibit A)(Vickrey, Paul) (Entered: 04/10/2020) |
| 04/13/2020 | 34 | MINUTE entry before the Honorable Manish S. Shah: Defendants shall respond to the complaint by 5/12/20. All fact discovery shall be noticed in time for completion by 2/1/2021. Plaintiffs shall make a settlement demand along with plaintiff's MIDP disclosures and defendants shall respond to plaintiffs demand within 30 days. An agreed confidentiality order may be submitted to proposed_order_shah@ilnd.uscourts.gov. The parties may contact susan_mcclintic@ilnd.uscourts.gov for a settlement referral. The motion for disclosure of grand jury transcripts is granted. The Cook County Public Defender's Office is ordered to release all five grand jury transcripts from The People of the State of Illinois vs. Tabatha Washington and Donte Howard, No. 18 CR 09222, to plaintiffs' counsel subject to the parties' agreement to treat the transcripts confidentially pending entry of a discovery confidentiality order. A status hearing is set for 7/15/20 at 09:30 AM. Notices mailed. (psm, ) (Entered: 04/13/2020) |
| 04/24/2020 | 35 | ORDER Third Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on April 24, 2020. All open cases are impacted by this Third Amended General Order. Parties are must carefully review all obligations under this Order, including the requirement listed in paragraph number 5 to file a joint written status report in most civil cases. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 4/24/2020: Mailed notice. (docket8, ) (Entered: 04/27/2020) |
| 05/26/2020 | 36 | ORDER ORDER Fourth Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on May 26, 2020. This Order does not extend or modify any deadlines set in civil cases. For non−emergency motions, no motion may be noticed for presentment on a date earlier than July 15, 2020. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 5/26/2020: Mailed notice. (docket9, ) (Entered: 05/26/2020) |
| 06/08/2020 | 37 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for extension of time *Opposed Second Motion for Extension of Time to Answer or Otherwise Plead* (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 06/08/2020) |
| 06/08/2020 | 38 | MINUTE entry before the Honorable Manish S. Shah: Defendants' motion for an extension of time 37 is granted in part, denied in part. Defendants' response to the complaint is now due 6/22/20, and defendants must meet this deadline even if they do not have the grand jury transcripts from the public defender's office. Defendants can answer the complaint based on the information they have, and if new information comes to light, they can amend their pleadings. The court will not set a deadline for the public defender to comply with the court order just yet. The parties can commence discovery without the transcripts. If the delay becomes a barrier to progress, the court will impose a deadline. The close of fact discovery remains 2/1/21. The status hearing on 7/15/20 is stricken and the parties shall file a joint status report on the progress of discovery on 8/13/20. Notices mailed. (psm, ) (Entered: 06/08/2020) |
| 06/22/2020 | 39 | ANSWER to Complaint with Jury Demand *and Affirmative Defenses* by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 06/22/2020) |
| 07/02/2020 | 40 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for order *The Parties' Joint Motion for Entry of Agreed Confidentiality Protective Order* (Attachments: # 1 Exhibit, # 2 Notice of Filing)(Murray, Christiane) (Entered: 07/02/2020) |

| 07/07/2020 | 41 | AGREED CONFIDENTIALITY PROTECTIVE ORDER. Signed by the Honorable Manish S. Shah on 7/7/2020: Motion for entry of agreed confidentiality order 40 is granted. Notices mailed. Notices mailed. (psm, ) (Entered: 07/07/2020) |
|---|---|---|
| 07/09/2020 | 42 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for order *Unopposed Motion for Entry of HIPAA Protective Order* (Attachments: # 1 Notice of Filing)(Murray, Christiane) (Entered: 07/09/2020) |
| 07/10/2020 | 43 | AGREED QUALIFIED HIPAA Protective Order. Signed by the Honorable Manish S. Shah on 7/10/2020. The motion for entry of protective order 42 is granted. Notices mailed. (psm, ) (Entered: 07/10/2020) |
| 07/10/2020 | 44 | ORDER Fifth Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in–person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in–court proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020: Mailed notice. (Clerk7, Docket) (Entered: 07/10/2020) |
| 07/22/2020 | 45 | NOTICE of Service of Responses to Mandatory Initial Discovery (MIDP) , filed by Plaintiffs Donte Howard, Tabatha Washington. (Vickrey, Paul) (Entered: 07/22/2020) |
| 07/22/2020 | 46 | NOTICE of Service of Responses to Mandatory Initial Discovery (MIDP) , filed by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia. (Schnidt, Emily) (Entered: 07/22/2020) |
| 08/13/2020 | 47 | STATUS Report *Parties' Joint Status Report* by Donte Howard, Tabatha Washington (Brown, Dylan) (Entered: 08/13/2020) |
| 08/14/2020 | 48 | MINUTE entry before the Honorable Manish S. Shah: The parties shall file an updated status report on the progress of discovery on 10/21/20. Notices mailed. (psm, ) (Entered: 08/14/2020) |
| 10/21/2020 | 49 | STATUS Report *Parties' Joint Status Report* by Donte Howard, Tabatha Washington (Vickrey, Paul) (Entered: 10/21/2020) |
| 10/22/2020 | 50 | MINUTE entry before the Honorable Manish S. Shah: The parties shall file a status report on 1/5/21 with an update on discovery progress and a proposal for an expert discovery and dispositive motion schedule. Notices mailed. (psm, ) (Entered: 10/22/2020) |
| 11/18/2020 | 51 | MOTION by Plaintiffs Donte Howard, Tabatha Washington To Release Impounded Physical Exhibits (Attachments: # 1 Exhibit A)(Brown, Dylan) (Entered: 11/18/2020) |
| 11/19/2020 | 52 | MINUTE entry before the Honorable Manish S. Shah: Defendants' response to the motion to release impounded physical exhibits 51 is due 11/25/20. Plaintiff's reply is due 12/2/20. The court will issue a ruling via cm/ecf. Notices mailed. (psm, ) (Entered: 11/19/2020) |
| 11/25/2020 | 53 | RESPONSE by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garciain Opposition to MOTION by Plaintiffs Donte Howard, Tabatha Washington To Release Impounded Physical Exhibits 51 (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 11/25/2020) |
| 12/02/2020 | 54 | REPLY by Donte Howard, Tabatha Washington to response in opposition to motion, 53 *Plaintiffs' Reply in Support of Motion to Release Impounded Physical Exhibits* (Brown, Dylan) (Entered: 12/02/2020) |
| 12/07/2020 | 55 | ORDER. Signed by the Honorable Manish S. Shah on 12/7/2020: Plaintiffs' motion to release impounded exhibits 51 is granted in part. The court orders the Clerk of the Circuit Court of Cook County to preserve and maintain the exhibits impounded in Cook County Case Number 18 CR 9222, People v. Tabatha Washington, until further order of this court. The Clerk of the Circuit Court of Cook County shall make the exhibits available for inspection and copying by the parties. Plaintiffs shall serve a copy of this order on the Clerk of the Circuit Court of Cook County. The parties are ordered to confer on a protocol for the release of the tangible items to an appropriate custodian for scientific testing. Upon approval of a protocol, this court will order the Cook County Clerk to release the items for use in this case. [For further detail see |

|  |  | attached order.] Notices mailed. (psm, ) (Entered: 12/07/2020) |
|---|---|---|
| 12/18/2020 | 56 | MOTION by Plaintiffs Donte Howard, Tabatha Washington to compel *Plaintiff's Motion to Compel* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Brown, Dylan) (Entered: 12/18/2020) |
| 12/21/2020 | 57 | MINUTE entry before the Honorable Manish S. Shah: Defendants' response to the motion to compel is due 1/15/21. No reply is permitted unless requested by the court. The court will review the motion and response and either convene a telephone hearing or rule on the motion by cm/ecf. Notices mailed. (psm, ) (Entered: 12/21/2020) |
| 12/21/2020 | 58 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia to compel *Compliance with Outstanding Written Discovery* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Notice of Filing)(Schnidt, Emily) (Entered: 12/21/2020) |
| 12/22/2020 | 59 | MINUTE entry before the Honorable Manish S. Shah: Plaintiff's response to defendant's motion to compel is due 1/18/21. No reply is permitted unless requested by the court. Notices mailed. (psm, ) (Entered: 12/22/2020) |
| 01/05/2021 | 60 | STATUS Report *and First Joint Motion for Extension of Time to Complete Fact Discovery, Joint* by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 01/05/2021) |
| 01/06/2021 | 61 | MINUTE entry before the Honorable Manish S. Shah: Fact discovery is extended to 8/2/21. The court will set an expert discovery and dispositive motion schedule when the parties get closer to completing fact discovery. The briefing schedule on the motions to compel remains as set. Notices mailed. (psm, ) (Entered: 01/06/2021) |
| 01/15/2021 | 62 | RESPONSE by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garciain Opposition to MOTION by Plaintiffs Donte Howard, Tabatha Washington to compel *Plaintiff's Motion to Compel* 56 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Notice of Filing)(Schnidt, Emily) (Entered: 01/15/2021) |
| 01/18/2021 | 63 | MEMORANDUM by Donte Howard, Tabatha Washington in Opposition to motion to compel, 58 *Plaintiffs' Memorandum In Opposition To Defendants' Motion To Compel* (Attachments: # 1 Exhibit A)(Brown, Dylan) (Entered: 01/18/2021) |
| 01/25/2021 | 64 | MINUTE entry before the Honorable Manish S. Shah: Plaintiffs' motion to compel 56 is denied. The line between lawyerly precision and evasiveness is thin one, but here, defendants' responses to the requests for admission and interrogatories fall on the permissible side of the line. What Garcia was told is not the same as what Garcia heard and Garcia is not able to admit or deny every possible permutation of statements possibly made by White or Cage. The volume of discovery is not so great that the City's reference to the file amounts to evasiveness. Plaintiffs understand that the City interprets the investigation differently than plaintiffs and there is no value to compelling a more specific response. Similarly, the Alonzo and Balodimas interrogatory responses adequately identify the bases for Alonzo's testimony and Balodimas's denial. The interrogatories are not premature contention interrogatories, but the responses are adequate. Defendants have pointed to statements that Washington, White, Cage, and Edmondson allegedly made describing a beating of Edmondson. Whether the statements support defendants' theory of the case is not something that will be resolved through supplemental answers. As plaintiffs point out, the probable cause determination will be based on what the officers knew at the time. Given defendants' reliance on the case file materials, the universe of evidence is well known to both sides. Notices mailed. (psm, ) (Entered: 01/25/2021) |
| 01/25/2021 | 65 | MINUTE entry before the Honorable Manish S. Shah: Defendants' motion to compel 58 is granted in part, denied in part. To the extent plaintiffs' social security numbers are not contained in unredacted discovery documents, plaintiffs must provide their SSNs to defense counsel. SSNs can be used appropriately to investigate plaintiffs' background and to obtain information that bears on credibility (an important issue in this case), in addition to the Medicare check. Ten years of residential history is |

excessive, and defendants' argument for relevance is speculative and weak. The residential information will not be compelled. If defendants can articulate a need for the information after taking depositions, defendants may renew their motion. Plaintiffs' employment history is relevant to issues of credibility (e.g., may contain information admissible under Rule 608(b)) and can also shed light on plaintiffs' mental or emotional condition at the time of the charges and after. But ten years of information is excessive. Plaintiffs shall provide employment history (including executing Forms 4506) for May 2016 to the present. Howard's criminal history is discoverable. Whether the evidence is ultimately admissible under the rules of evidence is a separate question, but there may be information in a criminal history record that leads to impeachment material (whether under Rule 609 or 608(b)). There is no burden on Howard and the information requested is not secret or confidential. Howard must supplement his answer to Alonzo's Interrogatory No. 5. Plaintiffs are not compelled to answer Interrogatory No. 7. Gang affiliation apparently played no role in the probable−cause assessment, and defendants offer no argument that gang affiliation may be probative of bias or credibility at trial here. Plaintiffs' medical histories are relevant to evaluating claims for emotional distress damages and identifying the providers of any mental health treatment is not the same as producing records disclosing medical conditions. Plaintiffs must supplement their answer to Alonzo's Interrogatory No. 11, for the period of January 2008 to the present. Howard's experiences in custody may be probative of how he experienced the time he spent in custody as a result of the defendants' conduct. But Howard's answer, that Division 9 was more unpleasant and terrifying than his other experiences, is a description of the difference. Defendants can explore the details at Howard's deposition. Howard is not compelled to supplement his answer to Garcia's Interrogatory No. 1. Washington asserts that the identities of her children have been disclosed. No supplement to Garcia's Interrogatory No. 2 or Alonzo's Interrogatory No. 15 (seeking the children's names) is necessary. Plaintiffs' answers to Alonzo's Interrogatory No. 18 are adequate and no supplement will be compelled. Plaintiffs' supplemental responses are due by 2/22/21. Notices mailed. (psm, ) (Entered: 01/25/2021)

| | | |
|---|---|---|
| 01/25/2021 | 66 | MINUTE entry before the Honorable Manish S. Shah: The parties shall file a joint status report on discovery progress on 4/28/21.Notices mailed. (psm, ) (Entered: 01/25/2021) |
| 03/29/2021 | 67 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for order *Unopposed Motion for Entry of Amended HIPAA Protective Order* (Attachments: # 1 Exhibit, # 2 Notice of Filing)(Schnidt, Emily) (Entered: 03/29/2021) |
| 03/30/2021 | 68 | AMENDED HIPAA Protective Order. Signed by the Honorable Manish S. Shah on 3/30/2021: The motion for Entry of Amended HIPAA Protective Order 67 is granted. Notices mailed. (psm, ) (Entered: 03/30/2021) |
| 04/28/2021 | 69 | STATUS Report *Parties' Joint Status Report* by Donte Howard, Tabatha Washington (Vickrey, Paul) (Entered: 04/28/2021) |
| 04/29/2021 | 70 | MINUTE entry before the Honorable Manish S. Shah: The parties shall file a joint status report with an update on discovery progress on 7/1/21. Notices mailed. (psm, ) (Entered: 04/29/2021) |
| 07/01/2021 | 71 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for extension of time to complete discovery *Defendants' Opposed Second Motion for Extension of Time to Complete Fact Discovery* (Attachments: # 1 Exhibit, # 2 Notice of Filing)(Schnidt, Emily) (Entered: 07/01/2021) |
| 07/01/2021 | 72 | STATUS Report *Parties' Joint Status Report* by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 07/01/2021) |
| 07/01/2021 | 73 | MINUTE entry before the Honorable Manish S. Shah: Plaintiffs' response to the motion for extension of time to complete discovery 71 is due by 7/8/2021. No reply is permitted unless requested by the court. The court will either rule by cm/ecf or schedule a telephone hearing with the parties. (mss) (Entered: 07/01/2021) |
| 07/08/2021 | 74 | RESPONSE by Donte Howard, Tabatha Washingtonin Opposition to MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia |

|  |  |  |
|---|---|---|
|  |  | for extension of time to complete discovery *Defendants' Opposed Second Motion for Extension of Time to Complete Fact Discovery* 71 *Plaintiffs' Partial Opposition to Defendants' Second Motion for Extension of Time to Complete Fact Discovery* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11)(Brown, Dylan) (Entered: 07/08/2021) |
| 07/13/2021 | 75 | MINUTE entry before the Honorable Manish S. Shah: Defendants' motion for an extension of time 71 is granted in part. The issue of more DNA testing is one of expert discovery and the court declines to rule on the relevance of that evidence now. An extension of time for fact discovery is appropriate to give the parties more time to depose plaintiffs and relevant fact witnesses, but the court finds that defendants' motion is too vague about the number and relevance of witnesses (especially the "additional witnesses pertinent to Plaintiffs' claim for damages") to justify a four−month extension. There is no right to discover every fact a party is curious about and a shorter extension will force the parties to make decisions about important discovery. Fact discovery is extended to 10/22/21 and is limited to completing written discovery for subpoenas or requests previously issued and depositions. No new written discovery may be propounded. On 9/22/21, the parties shall file a joint status report on the progress of fact discovery and with a proposal for expert discovery. Any motion to seek DNA testing must be filed by 9/29/21. Notices mailed. (psm, ) (Entered: 07/13/2021) |
| 08/19/2021 | 76 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for rule to show cause *Why Khadijah Hill and Anthony Beard Should not be Found in Contempt of Court for Failure to Comply with Subpoena Duces Tecum* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Notice of Filing)(Schnidt, Emily) (Entered: 08/19/2021) |
| 08/20/2021 | 77 | MINUTE entry before the Honorable Manish S. Shah: Defendants' motion for a rule to show cause 76 is granted. Subpoena respondents Hill and Beard shall appear by telephone to show cause why they should not be held in contempt for court for failure to appear at their depositions. Hearing set for 8/26/21 at 10:30 a.m. Members of the public and media may listen to these proceedings by dialing 1−888−204−5984 and using access code 9146677. Counsel of record and other essential case participants will receive an email prior to the start of the telephone hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. If counsel and the witnesses work out an accommodation, defense counsel shall file a status report by 8/25/21 advising the court that the show−cause hearing is not necessary. Defense counsel must serve this docket entry on Hill and Beard. Notices mailed. (psm, ) (Entered: 08/20/2021) |
| 08/24/2021 | 78 | STATUS Report *Regarding Defendants' Motion for Rule to Show Cause, Docket No. 76* by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 08/24/2021) |
| 08/25/2021 | 79 | MINUTE entry before the Honorable Manish S. Shah: Based on defendants' status report 78 , the telephone hearing on 8/26/21 is stricken and the rule to show cause against deponents Hill and Beard is discharged. The parties' status report on discovery remains due 9/22/21.Mailed notice. (mss) (Entered: 08/25/2021) |
| 09/03/2021 | 80 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for protective order *Defendants' Unopposed Motion for Entry of Agreed Amended Confidentiality Protective Order* (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 09/03/2021) |
| 09/03/2021 | 81 | AGREED AMENDED CONFIDENTIALITY PROTECTIVE ORDER. Signed by the Honorable Manish S. Shah on 9/3/2021: the motion for entry of agreed protective order 80 is granted. Notices mailed. (psm, ) (Entered: 09/03/2021) |
| 09/21/2021 | 82 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia Defendants' Opposed Motion for Leave to Issue Subpoenas and Third Motion for Extension of Time To Complete Fact Discovery (Attachments: # 1 Exhibit, |

|  |  | # <u>2</u> Exhibit, # <u>3</u> Exhibit, # <u>4</u> Notice of Filing)(Schnidt, Emily) (Entered: 09/21/2021) |
|---|---|---|
| 09/22/2021 | 83 | STATUS Report *Parties' Joint Status Report* by Donte Howard, Tabatha Washington (Brown, Dylan) (Entered: 09/22/2021) |
| 09/22/2021 | 84 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for extension of time *to File Motion for Forensic Testing, Opposed* (Attachments: # <u>1</u> Notice of Filing)(Schnidt, Emily) (Entered: 09/22/2021) |
| 09/23/2021 | 85 | MINUTE entry before the Honorable Manish S. Shah: Plaintiffs shall file a response to the motion for extension of time and to issue subpoenas by 9/24/21. No reply is permitted and the court will either issue a ruling on the docket or convene a telephone conference on the motion. Plaintiffs may file an opposition to defendants' motion for an extension of time to file a motion for forensic testing by 9/29/21, and the deadline for defendants to file the motion for forensic testing is stricken and will be reset after the court hears plaintiff's opposition. Notices mailed. notice (psm, ) (Entered: 09/23/2021) |
| 09/24/2021 | 86 | RESPONSE by Donte Howard, Tabatha Washington in Opposition to MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia Defendants' Opposed Motion for Leave to Issue Subpoenas and Third Motion for Extension of Time To Complete Fact Discovery <u>82</u> (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2)(Vickrey, Paul) (Entered: 09/24/2021) |
| 09/27/2021 | 87 | MINUTE entry before the Honorable Manish S. Shah: Defendant's motion for leave to issue subpoenas and extend discovery <u>84</u> is granted in part, denied in part. Defendants may subpoena records related to Howard's 2018 conviction. Howard's credibility is a relevant issue in the case, and a recent conviction for an act of dishonesty is a reasonable avenue to explore. Given Howard's disclaimer of any damages related to his inability to pursue a GED, <u>86</u> at 2, pursuit of his educational records is unnecessary. Further exploration of Washington's treatment or services reflected in DCFS records is not proportionate to the needs of the case at this late stage of discovery. Defendants have enough information to know what kinds of services Washington received or attended and can question her at her deposition. Although Washington's mental and emotional health is an issue in the case, and it has taken time to track various components of Washington's history, defendants do not make a persuasive case for belaboring the details. They make no argument that detailed records are likely to undermine Washington's argument that defendants' conduct caused her emotional harm. Defendants have enough to probe causation. If Washington's deposition reveals the identity of previously undisclosed witnesses who have personal knowledge of the circumstances surrounding Edmondson's injuries (either from direct observation or because of statements made by Howard or Washington), the court will allow depositions of those witnesses but assumes they can be completed within the 10/22/21 deadline. The court will entertain an extension only if supported by a specific request to depose a witness and an explanation of good cause why the deposition could not be completed by 10/22/21. A joint status report on discovery progress is due 10/12/21. Notices mailed. (psm, ) (Entered: 09/27/2021) |
| 09/28/2021 | 88 | MINUTE entry before the Honorable Manish S. Shah: Docket Entry <u>87</u> is corrected to read: Defendant's motion for leave to issue subpoenas and extend discovery <u>82</u> is granted in part, denied in part. The remainder of the entry remains in place. Notices mailed. (psm, ) (Entered: 09/28/2021) |
| 09/29/2021 | 89 | RESPONSE by Plaintiffs Donte Howard, Tabatha Washington to set deadlines,, <u>85</u> , motion for miscellaneous relief, <u>82</u> *Plaintiff's Response in Opposition to Defendants' Motion for Extension of Time to File Motion for Forensic Testing* (Attachments: # <u>1</u> Exhibit A)(Vickrey, Paul) (Entered: 09/29/2021) |
| 10/12/2021 | 90 | MINUTE entry before the Honorable Manish S. Shah: Defendants' motion for an extension of time to file a motion for forensic testing <u>84</u> is granted. A new deadline for the motion for forensic testing will not be set until the parties complete fact discovery and the court sets a schedule for summary judgment motions. The court may defer expert discovery until after the parties brief summary judgment (although defendants should understand that if they want to file a motion for summary judgment before completing expert discovery, they will not be given another chance at summary judgment). And whether the court will allow the forensic testing remains to be seen. Plaintiffs are correct that information not known to the defendants is not relevant to |

| | | |
|---|---|---|
| | | liability (probable cause is based on what the defendants knew at the time they acted). But plaintiffs' culpability in the homicide might be probative of compensatory or punitive damages (if plaintiffs were complicit in the killing and knew it, that could inform the quantum of emotional suffering attributable to being charged and prosecuted without probable cause). Notices mailed. (psm, ) (Entered: 10/12/2021) |
| 10/12/2021 | 91 | STATUS Report *Parties' Joint Status Report* by Donte Howard, Tabatha Washington (Brown, Dylan) (Entered: 10/12/2021) |
| 10/13/2021 | 92 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for discovery *OPPOSED MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Notice of Filing)(Schnidt, Emily) (Entered: 10/13/2021) |
| 10/14/2021 | 93 | RESPONSE by Donte Howard, Tabatha Washingtonin Opposition to MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for discovery *OPPOSED MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY* 92 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Vickrey, Paul) (Entered: 10/14/2021) |
| 10/22/2021 | 94 | MINUTE entry before the Honorable Manish S. Shah: Defendant's motion to conduct additional discovery 92 is granted in part, denied in part. The parties may take Judge Ayala−Gonzalez's deposition after the fact discovery deadline, on a date convenient to the parties and witness. Defendants are not allowed to depose Destiny or Diamond Flowers. Although discovery is an investigative process, the court is not persuaded that either Flowers is likely to have meaningful information to provide. The countervailing value in putting an end to discovery to move the case forward outweighs any admissible evidence the Flowerses might have. Defendants may continue to obtain subpoena compliance (on previously issued and served subpoenas) from the Sheriff, DCFS, Cook County, Stroger, and Rush, but may not serve new subpoenas. Allowing subpoena recipients to come into full compliance is not an extension of discovery that harms plaintiff (and will not delay the schedule for summary judgment). Plaintiff Washington should supplement her discovery responses with additional medical records that she can obtain, and all parties have an ongoing obligation to supplement throughout the case. Subpoena recipients should complete their productions by 11/22/21. The parties must file a status report on 11/16/21 confirming that Judge Ayala−Gonzalez's deposition is complete (or scheduled) and with any proposal for briefing summary judgment before expert discovery. If defendants intend to seek summary judgment before expert discovery, they must state whether they anticipate filing a motion for partial or complete summary judgment, and on what theories of liability. Notices mailed. (psm, ) (Entered: 10/22/2021) |
| 10/22/2021 | 95 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia to compel *Third Party Witness to Comply with Subpoena, Opposed* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Notice of Filing)(Schnidt, Emily) (Entered: 10/22/2021) |
| 10/22/2021 | 96 | NOTICE by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia *Amended Notice of Filing* (Schnidt, Emily) (Entered: 10/22/2021) |
| 10/25/2021 | 97 | MINUTE entry before the Honorable Manish S. Shah: Telephone hearing on defendants' motion to compel 95 is set for 11/2/21 at 10:30 a.m. Subpoena Respondent Cook County Public Defender's Office must appear at the hearing. Members of the public and media may listen to these proceedings by dialing 1−888−204−5984 and using access code 9146677. Counsel of record and other essential case participants will receive an email prior to the start of the telephone hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notices mailed. (psm, ) (Entered: 10/25/2021) |

| | | |
|---|---|---|
| 11/02/2021 | 98 | MINUTE entry before the Honorable Manish S. Shah: Telephone hearing held on defendants' motion to compel 95 . The court will review the documents from Elizabeth Kucaba's privilege log entitled "Typed Case Notes" and Brett Balmer's privilege log entitled "Various Dates Continuous Notes" in camera. The Cook County Public Defender's Office shall submit the documents in pdf format to proposed_order_shah@ilnd.uscourts.gov no later than 11/9/21. The court will issue a ruling on the motion via cm/ecf or reconvene a telephone hearing. The parties' status report remains due 11/16/21. Notices mailed. (psm, ) (Entered: 11/02/2021) |
| 11/08/2021 | 99 | MINUTE entry before the Honorable Manish S. Shah: The court received and reviewed in camera the relevant items from the Public Defender privilege logs. The motion to compel 95 is denied in part. The Kucaba notes are protected by the attorney work product doctrine, attorney–client privilege, and elsewhere, contain irrelevant information about procedural events during the criminal prosecution that need not be disclosed. No production of the Kucaba notes will be compelled. The Balmer notes are largely protected by the work–product doctrine and production will not be compelled. But there are a few lines of witness interview summaries that are not likely protected. Namely, a summary of an interview with Carlton White on 10/13/19 (on p.4 of the tendered document), a short conversation with Tierra Thomas on 6/24/19 (on p.6), and conversations with Latangela Tynes on 4/24 and 4/22/19 (p.8), 10/24/18 (p. 13), 10/8/18 (p. 14). There are two summarized conversations with the client, Washington, on 7/9/18 (p. 17) and 6/11/18 (p. 19–20) that appear to summarize factual statements by Washington to Balmer. Based on the waiver of privilege at the deposition (and because these summaries merely disclose reported facts likely within the scope of the waiver at the deposition without revealing legal advice), the court is inclined to produce those excerpts. In addition, the Balmer notes contain what appear to be summaries of recorded witness interviews conducted by the police and tendered to the defense as part of the criminal discovery. The court assumes the parties already have those recorded interviews, but if they do not, then Balmer's summaries may be relevant and discoverable. But some parts of Balmer's summaries of the recorded interviews reveal Balmer's mental impressions. In sum, the court is inclined to produce short excerpts of Balmer's notes re statements made by Carlton White, Tierra Thomas, Latangela Tynes, and Tabatha Washington, and may parse the notes of recorded interviews conducted by CPD if the parties do not already have the underlying interviews (or summaries). The parties may file supplemental memos stating their position about disclosure of these items from Balmer's notes by 11/12/21. Notices mailed. (psm, ) (Entered: 11/08/2021) |
| 11/12/2021 | 100 | Position Paper Regarding The Cook County Public Defender's Notes by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia (Attachments: # 1 Exhibit, # 2 Notice of Filing)(Schnidt, Emily) (Entered: 11/12/2021) |
| 11/15/2021 | 101 | MINUTE entry before the Honorable Manish S. Shah: The court orders the Cook County Public Defender's Office to produce redacted copies of Balmer's notes. As the court noted in its 11/8/21 docket entry, some of Balmer's notes contain unprotected summaries of witness statements. The court also concludes that some summaries of client Washington's statements are not privileged because Washington waived the privilege. The court has prepared a redacted copy of Balmer's notes consistent with its rulings and will email a copy to counsel for the Public Defender's Office. The Public Defender's Office will then produce the notes to the parties. Notices mailed. (psm, ) (Entered: 11/15/2021) |
| 11/16/2021 | 102 | STATUS Report *Parties' Joint Status Report* by Donte Howard, Tabatha Washington (Brown, Dylan) (Entered: 11/16/2021) |
| 11/16/2021 | 103 | STATUS Report *Amended – Parties' Joint Status Report* by Donte Howard, Tabatha Washington (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Brown, Dylan) (Entered: 11/16/2021) |
| 11/17/2021 | 104 | MINUTE entry before the Honorable Manish S. Shah: Defendants' motion for summary judgment is due 1/28/22, plaintiffs' response is due 2/25/22, and defendants' reply is due 3/18/22. The court will rule by cm/ecf. The parties may continue to negotiate subpoena compliance from third–parties, and if some delay in production is acceptable to the parties, motions to compel are not necessary. Notices mailed. (psm, ) (Entered: 11/17/2021) |

| | | |
|---|---|---|
| 01/28/2022 | 105 | Defendants' Addendum of Exhibits in Support of Their Motion for Summary Judgment by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Notice of Filing)(Schnidt, Emily) (Entered: 01/28/2022) |
| 01/28/2022 | 106 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for leave to file excess pages (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 01/28/2022) |
| 01/28/2022 | 107 | MOTION by Defendants Demosthenes Balodimas, Vincent Alonzo, City of Chicago, Adrian Garcia for summary judgment (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 01/28/2022) |
| 01/28/2022 | 108 | MEMORANDUM by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia in support of motion for summary judgment 107 (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 01/28/2022) |
| 01/28/2022 | 109 | RULE 56 Local Rule 56.1 Statement by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia regarding motion for summary judgment 107 (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 01/28/2022) |
| 01/28/2022 | 110 | MEMORANDUM by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia in support of motion for summary judgment 107 *Amended Memorandum* (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 01/28/2022) |
| 01/29/2022 | 111 | MINUTE entry before the Honorable Manish S. Shah: The motion for leave to file excess pages 106 is granted. Defendants' 35−page brief is accepted for filing and plaintiffs may use up to 35 pages in their response brief. Defendants' reply brief is limited to 25 pages. (mss) (Entered: 01/29/2022) |
| 02/14/2022 | 115 | EXHIBIT by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia (Attachments: # 1 1 Verbatim Thumb Drive)(tg, ) (Entered: 03/09/2022) |
| 02/25/2022 | 112 | RESPONSE by Donte Howard, Tabatha Washingtonin Opposition to MOTION by Defendants Demosthenes Balodimas, Vincent Alonzo, City of Chicago, Adrian Garcia for summary judgment 107 *Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment* (Vickrey, Paul) (Entered: 02/25/2022) |
| 02/25/2022 | 113 | RESPONSE by Donte Howard, Tabatha Washingtonin Opposition to MOTION by Defendants Demosthenes Balodimas, Vincent Alonzo, City of Chicago, Adrian Garcia for summary judgment 107 *Plaintiff's CORRECTED Response in Opposition to Defendants' Motion for Summary Judgment* (Vickrey, Paul) (Entered: 02/25/2022) |
| 02/25/2022 | 114 | RESPONSE by Plaintiffs Donte Howard, Tabatha Washington to Rule 56 statement 109 *Plaintiffs' Local Rule 56.1 Response to Defendants' Local Rule 56.1(2) Statement of Material Facts* (Attachments: # 1 Table of Exhibits, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F (Cover Page − Video), # 8 Exhibit G (Cover Page − Video), # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P (Cover Page − Body Camera), # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V (Cover Page− Body Camera), # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA, # 29 Exhibit BB, # 30 Exhibit CC, # 31 Exhibit DD, # 32 Exhibit EE, # 33 Exhibit FF, # 34 Exhibit GG, # 35 Exhibit HH, # 36 Exhibit II, # 37 Exhibit JJ, # 38 Exhibit KK (Cover Page − Video), # 39 Exhibit LL, # 40 Exhibit MM, # 41 Exhibit NN, # 42 Exhibit OO, # 43 Exhibit PP (Cover Page − Video), # 44 Exhibit QQ (Cover Page − Video), # 45 Exhibit RR, # 46 Exhibit SS, # 47 Exhibit TT (Cover Page − Video), # 48 Exhibit UU, # 49 Exhibit VV, # 50 Exhibit WW (Cover Page − Video))(Vickrey, Paul) (Entered: 02/25/2022) |

| | | |
|---|---|---|
| 03/17/2022 | 116 | DIGITAL EXHIBITS submitted by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia regarding 105<br><br>For more information, please visit https://www.ilnd.uscourts.gov/ExhibitDrop. If you wish to download a digital exhibit, please send your request to the Certified Copy Desk (CCD) inbox at CCD_ILND@ilnd.uscourts.gov. You will be provided with an invoice and charged according to the Fee Schedule. Once your payment has been processed, you will receive a URL via email to download the exhibit. (sxh, ) (Entered: 03/17/2022) |
| 03/18/2022 | 118 | Defendants' Addendum of Exhibits for their Reply in Support of their Motion for Summary Judgment by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Notice of Filing)(Schnidt, Emily) (Entered: 03/18/2022) |
| 03/18/2022 | 119 | RULE 56 56.1(f) Statement *Response to Plaintiffs' Statement of Additional Facts* (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 03/18/2022) |
| 03/18/2022 | 120 | REPLY by Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia to response in opposition to motion, 113 , memorandum in support of motion 110 *Reply In Support of Defendants' Motion for Summary Judgment* (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 03/18/2022) |
| 03/22/2022 | 121 | MOTION by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia for leave to file *Defendants' Amended Local Rule 56.1(a)(2) Statement of Material Facts and Reply in Support of Motion for Summary Judgment* (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 03/22/2022) |
| 03/23/2022 | 122 | MINUTE entry before the Honorable Manish S. Shah: The motion for leave to file 121 is granted. Defendants may file their amended LR 56.1 statement and reply brief by 3/25/22 and plaintiff may file an amended response to the LR 56.1 statement by 3/29/22. Notices mailed. (psm, ) (Entered: 03/23/2022) |
| 03/24/2022 | 123 | RULE 56 Defendants' Amended Local Rule 56.1(a)(2) Statement of Material Facts Statement (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 03/24/2022) |
| 03/25/2022 | 124 | REPLY by Defendants Vincent Alonzo, Demosthenes Balodimas, City of Chicago, Adrian Garcia to memorandum in support of motion 108 *AMENDED REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT* (Attachments: # 1 Notice of Filing)(Schnidt, Emily) (Entered: 03/25/2022) |
| 03/29/2022 | 125 | RULE 56 56.1 Statement by Donte Howard, Tabatha Washington regarding motion for summary judgment 107 *Plaintiffs' Amended Local Rule 56.1 Response To Defendants' Amended Local Rule 56.1(2) Statement Of Material Facts* (Vickrey, Paul) (Entered: 03/29/2022) |
| 07/22/2022 | 126 | MEMORANDUM Opinion and Order. Signed by the Honorable Manish S. Shah on 7/22/2022: Defendants' motion for summary judgment, 107 , is granted. Enter judgment and terminate civil case. [For further detail see attached order.] Notices mailed. (psm, ) (Entered: 07/22/2022) |
| 07/22/2022 | 127 | ENTERED JUDGMENT. Notices mailed. (psm, ) (Entered: 07/22/2022) |
| 08/17/2022 | 128 | NOTICE of appeal by Donte Howard, Tabatha Washington regarding orders 126 Filing fee $ 505, receipt number AILNDC−19750352. Receipt number: n (Vickrey, Paul) (Entered: 08/17/2022) |
| 08/17/2022 | 129 | DOCKETING Statement by Donte Howard, Tabatha Washington regarding notice of appeal 128 (Vickrey, Paul) (Entered: 08/17/2022) |
| 08/18/2022 | 130 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 128 . (aee, ) (Entered: 08/18/2022) |
| 08/18/2022 | 131 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 128 . Notified counsel. (aee, ) (Entered: 08/18/2022) |